UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DISTRIBUTION INTELLIGENCE SYSTEMS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SMITH & NEPHEW, INC.,**<br><br>Defendant. | **CASE NO. 1:24-cv-223**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Distribution Intelligence Systems, LLC ("Plaintiff" and/or "DIS") files this complaint against Smith & Nephew, Inc. ("Defendant" and/or "Smith & Nephew") for infringement of U.S. Patent No. 8,617,160 ("the '160 Patent") and alleges as follows:

### THE PARTIES

1. Plaintiff is a Wyoming company having its principal place of business in Cheyenne, Wyoming.

2. Upon information and belief, Smith & Nephew is a company organized and existing under the laws of the State of Delaware and has a place of business at 7000 W. W William Cannon Dr., Austin, Texas 78735. On information and belief, Smith & Nephew may be served through its registered agent in the State of Texas: CT Corporation located at 1999 Bryan St. Ste. 900 Dallas, TX 75201-3140.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. Plaintiff is seeking damages, as well as attorney fees and costs.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. On information and belief, this Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6. On information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

7. Defendant also retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District. *See* Figure 1 below, showing a job listing for Defendant's Austin office.



Figure 1
(Source: LinkedIn)
(https://www.linkedin.com/jobs/search/?currentJobId=3818068964&geoId=102748797&keywords=smith%20%26%20nephew&location=Texas%2C%20United%20States&origin=JOB_SEARCH_PAGE_LOCATION_AUTOCOMPLETE&refresh=true)

8. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Systems, Inc.*, 2022 WL 4587861, at *2 (C.A.Fed. (Tex.), 2022). *See* Figure 2 below, showing Defendant's Austin office.



**Figure 2**
(Source: Google Maps)

**PATENTS-IN-SUIT**

9. Plaintiff is the sole and exclusive owner, by assignment, of the '160 Patent.

10. On December 31, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '160 Patent, entitled "Dynamic Intramedullary Hardware." The '160 Patent is attached as Exhibit A.

11. Plaintiff is the sole and exclusive owner, by assignment, of the '160 Patent.

12. Plaintiff possesses all rights of recovery under the '160 Patent, including the exclusive right to recover for past, present and future infringement.

13. The '160 Patent contains twenty claims including three independent claims (claims 1, 17 and 19) and seventeen dependent claims.

14. The priority date of the '160 Patent is at least as early as March 9, 2010. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

15. Plaintiff alleges infringement on the part of Defendant of the '160 Patent.

16. The '160 Patent teaches devices for implantation into compromised osseous material. In one embodiment, an intramedullary nail is provided comprising an outer tubular sheath, a flexible rod and a driver element mobile within the sheath longitudinally with an engagement element formed out of the wall of the tubular sheath. After the nail has been inserted, distal end first, into the intramedullary cavity, the flexible rod is pulled, thereby engendering the driver element to advance the engagement element into the cortical bone, thus keeping the intramedullary nail in position within the intramedullary cavity. *See* '160 Patent, Abstract.

17. The claims of the '160 Patent overcome deficiencies existing in the art as of the date of invention. For example, the inventive system solves the difficulty of the labor and time intensive process of securing an intramedullary nail within the intramedullary cavity of a bone by external screwing and drilling. The inventive system engenders an anchoring mechanism located within the intramedullary nail to engage the cortical bone. In this way, the labor and time requirements related to securing an intramedullary nail within the intramedullary cavity are substantially reduced. Additionally, the inventive system achieves the advantage of reduced radiological exposure to patients and medical personnel, and reduced scarring for the patient. Use of the inventive system is not limited to fractures of the length of the long bone, but could also be used in fractures of the ball from the rest of the long bone or for smaller bones. *Id.*, 2:21-34.

18. The '160 Patent was examined by Primary United States Patent Examiner Pedro Philogene. During the examination of the '160 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 606/62-68; 304, 313, 323, 326 and 327.

19. After conducting a search for prior art during the examination of the '160 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: US 4,204,531; US 4,227,518; US 4,237,875; US 4,275,717; US 4,453,539; US 4,519,100; US 4,721,103; US 4,854,312; US 4,862883; US 5,057,103; US 5,578,035; US 6,077,265; US 6,443,954; US 6,447,513; US 6,524,313; US 6,558,388; US 6,575,973; US 6,736,818; US6,780,185; US 7,029,476; US 7,097,648; US 7,601,152 and US 7,846,162.

20. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '160 Patent to issue. In so doing, it is presumed that Examiner Philogene used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Philogene had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '160 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '160 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been

known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Philogene.

21. The claims of the '160 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

22. The nominal expiration date for the claims of the '160 Patent is no earlier than April 18, 2031.

## ACCUSED INSTRUMENTALITIES

23. On information and belief, Defendant sells, advertises, offers for sale, uses, or otherwise provides exemplary products, including at least the Microraptor Knotless Suture Anchor, a medical implant used in orthopedic surgery for arthroscopic repair of various soft tissue structures and bones ("device for the implantation into compromised osseous material"). The foregoing are referred to as the "Accused Instrumentalities."

## COUNT I
## (Infringement of United States Patent No. 8,617,160)

24. Plaintiff refers to and incorporates the allegations in Paragraphs 1 – 23, the same as if set forth herein.

25. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

26. Defendant has knowledge of its infringement of the '160 Patent, at least as of the service of the present complaint.

27. The '160 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

28. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 17, of the '160 Patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as Exhibit B) the Accused Instrumentalities which infringe at least Claim 17 of the '160 Patent. Defendant has infringed and continues to infringe the '160 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

29. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 17, of the '160 Patent, by having its employees internally test and use these exemplary Accused Instrumentalities.

30. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

31. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe one or more claims, including at least Claim 17, of the '160 Patent. On information and belief, Defendant has also continued to sell the exemplary Accused Instrumentalities and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes one or more claims, including at least Claim

17, of the '160 Patent. *See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

32. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '160 Patent, literally or by the doctrine of equivalents, by selling exemplary Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims, including at least Claim 17, of the '160 Patent.

33. Exhibit C includes at least one chart comparing the exemplary claim 17 of the '160 Patent to Defendant's exemplary Accused Instrumentalities. As set forth in this chart, the Defendant's exemplary Accused Instrumentalities practice the technology claimed by the '160 Patent. Accordingly, the Defendant's exemplary Accused Instrumentalities incorporated in this chart satisfy all elements of the exemplary claim 17 of the '160 Patent.

34. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit B.

35. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

36. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

37. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

38. Plaintiff is in compliance with 35 U.S.C. § 287.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks the Court to:

1. Enter judgment for Plaintiff on this Complaint on all cases of action asserted herein;

2. Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receives notice of the order from further infringement of the '160 Patent (or, in the alternative, awarding Plaintiff running royalty from the time judgment going forward);

3. Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284; and

4. Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  March 4, 2024                                   Respectfully Submitted,

*/s/  René A. Vazquez*
René A. Vazquez, Esq.
  Virginia Bar No. 41988
  rvazquez@sinergialaw.com

**SINERGIA TECHNOLOGY LAW GROUP, PLLC**
18295 St. Georges Ct.
Leesburg, Virginia 20176
Telephone: (703) 989-2244

*/s/ Randall Garteiser*
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**